Good morning, Your Honors. Cynthia Hahn, representing Appellant Anibal Jose Diaz-Argueta. Excuse me. I'd like to reserve two minutes for rebuttal. One of the important issues needed to be addressed in this case is whether or not the Supreme Court case of Leocal v. Ashcroft demands that civil cases and criminal cases be treated the same when using the same statute. And what we have in the Ninth Circuit, and just not the Ninth Circuit alone, but many circuits, is a differential treatment of civil Petitioners from immigration courts, getting a different analysis, actually the actual analysis of 8 U.S.C. 1101, which in immigration is INA 101-843, compared to criminal defendants or appellants. But the problem with your argument, I read Leocal, and it says the statute has to mean the same thing in both criminal and civil contexts, but your problem is you're not dealing with a statute. You're dealing with a guideline, which we interpreted in the Pimintel-Flores case. Yes, but the guideline arose out of the statute. Well — The guideline arose out of the immigration statute, so — If you read Pimintel-Flores carefully, it's quite clear in the analysis that Judge Olson made at some length that he said, I understand. Here's the statute. Here's what the statute says, and the guideline says something different, period. I think under Leocal v. Ashcroft, I hate to respectfully disagree, but I think the Supreme Court made it clear that the statute is a statute is a statute, and a guideline — Well, but you see, Pimintel-Flores, I don't see how Pimintel-Flores is inconsistent with that. Pimintel-Flores says, here's the statute, that's what it means, and here's a guideline that is different from the statute. Because they are treating criminal defendants and civil petitioners differently. That's what ends up happening. And a matter of fact, in Pimintel-Flores, which I understand, Your Honor, was on the panel, so I'm being particularly differential because, you know, you thought this over already, but it does say significantly the guideline definition is different from the statutory definition of the phrase, crime of violence. But it also says the guideline requires a felony and a crime of violence. And if you read the guideline itself, not the commentary, but the guideline itself, 201.2b1aii, if you read it to me, what it says, which is a felony, must be a felony, and a crime of violence, there's no conflict with the INA statute. It means the same thing. It's when you get into the commentaries that you start deviating. Well, but you see, what you're doing is you're saying Pimintel-Flores is wrong, and you're saying the way we know it's wrong is this footnote in the Leocal case. But I don't read the footnote to say anything other than the statute. The statute, not the guidelines. The statute has to mean the same thing in a criminal case and a civil case. Yes, Your Honor, that is true. However, Pimintel-Flores was decided before we had the Leocal case. And then we had Booker, which came out and said the guidelines are merely advisory. So they've even gone down in authority from what they were before. Okay. I understand the argument. I'm not saying Pimintel-Flores is no longer good law. I'm saying that between Booker and Leocal, it has now been distinguished and that there's another way to interpret it is what I'm really saying here. I don't think actually in my briefs I did say Leocal requires Pimintel-Flores to be taken on bunk or withdrawn. But the more I thought about it, I don't think that's the case here. I think what we have is distinguishing features to this case that were not present in Pimintel-Flores. And if you take Booker and Leocal in conjunction, Mr. Díaz-Agueda is facing something quite different from what Mr. Pimintel-Flores faced. Okay. Do you want me to go on to the next issue or? Because I'm concerned, of course, yes. Pardon me? Okay. The next issue was whether the basically the minute orders are cognizable, judicially cognizable documents under United States versus Shepard versus United States. And what they said, what the Supreme Court said in Shepard was four things are judicially cognizable documents. One, terms of the charging document. Two, terms of the plea agreement. Three, transcript of colloquy between judge and defendant in which the factual basis for the plea is confirmed by the defendant. And four, some comparable judicial record of the information. What the court relied on in this case was minute order 8A. A minute order is a clerk-generated document. It is often full of errors, and particularly if you look, and these documents are listed at excerpts of record 53 to 71. 8A is listed at EOR 69. You'll see cross-outs. You'll see sticky notes on it saying this, you have the wrong statute here. This should have been something else. Clerks make a lot of mistakes. And as a matter of fact, I have to relate to that. I'm looking at excerpts of record 69. Yes. I don't see a cross-out. Pardon me? I do not see a cross-out. Is that minute order 8A? Am I misciting? Well, I'm on excerpts of record page 69. I don't have an 8A number on it. Okay. I've also got EOR 68. Okay. That's not that. Okay. There's not a cross-off on 8A. There is on the plea, which is, if the Court will give me a minute, I'll find the plea. I see a couple of cross-outs on EOR 68, but they seem to be insignificant. I'm not sure whether that's what you're referring to. Well, my whole point, Your Honor, is that the minute orders are just not very reliable. No, no, that's not the one I'm referring to. No, I want to make sure I treat your argument as best I can, so I want to see whether I think the cross-outs have any significance. No, Judge McKibben says this is what they do all the time in California. Is what, Your Honor? To have a minute order being the dispositive. Do you dispute that or? Well, Your Honor, in this case, I do. Oh, it's actually EOR 60, which is the change of plea to guilty by the defendant. What page is that? Excerpts of Record 60. Sixty. There's quite a bit of cross. Judge McKibben is an old judge. He must have seen a lot of California. Yes, Your Honor. And was he wrong in that? In, Your Honor, excuse me, in what? In saying this is the way California courts do it. This is all you get. California courts are form-driven. I'm a California attorney myself. I know that. However, that doesn't make them. The clerks do make mistakes consistently. My favorite example is last week I was in court on a case where a defendant had been deported, and the issue was whether he could be resentenced. And the minutes reflected the defendant was present in court. So I'd like to reserve the last two minutes, please, if I may. Well, I'm sure you're right. They make mistakes. But would the effect of your argument be you could never prove a California conviction because the way they do it precludes that? No, Your Honor. For example, this change of plea guilty at excerpts of Record 60, that's a document initialed and signed by the defendant. That's not a clerk-generated document. That's something the defendant went over and initialed. That's the one you're complaining about, is the cross-outs. Well, what concerns me is whether those cross-offs occurred before or after the defendant initialed those statements. We don't know. Anyway, I would like to reserve so I could talk a little bit more about some of the other things. Let's hear from the other side, and then we'll give you some time. Good morning, Your Honors. May it please the Court. My name is Robert Don Gifford, and I'm an assistant U.S. attorney from the District of Nevada. Just addressing the issues that were raised here at argument this morning. In regards to the Pimentel-Flores, I would not agree that the statute that counsel is referring to, A1101A43F, defining aggravated felony, is not the controlling statute in determining what a crime of violence is. In 2001, they changed the sentencing guidelines simply because somebody who's being convicted of a very serious crime is receiving the same level of enhancement as somebody who is convicted of, say, simple assault. So in 2001, they broke out the statute. And when you're looking at the guidelines, the very first thing they ask you, a felony, if it's drug trafficking, or a crime of violence, then it goes down to level B. Then level C is aggravated felony, and it cross-references you then over to the immigration statute, which is the 1101A43F, which counsel's referring to. In this case, counsel's putting the cart before the horse and wanting to skip over the first analysis. Don't look at A, go down to C first. And so therefore, Pimentel-Flores is correctly decided, and the government would stand by that, that just because the immigration statute is different, you never get there. Just looking at the guidelines, your analysis stops at the definition of what a crime of violence is, as defined under the statute. Moving on to the documentation that was brought forward to the court, the issue of what was raised was there was a question saying, well, Your Honor, we don't know if this was a misdemeanor or a felony. And that's basically what got us into looking into the documentation. The excerpts of record, and Judge McKibben even made reference to it. I believe that he called them paragraphs, but line numbers. Throughout the documentation, it shows that he was charged with a felony, and then referring to the excerpts of record, I believe it's at page 59. Excuse me, page 69. The language at his pronouncement of judgment is an assault with a firearm felony. Also, there's a box that's checked as a felony. Also, Judge McKibben also referred to certain blocks, as I believe it was line 65 and 67 through 69, which that also is found in excerpts of record, page 68, in which the defendant is charged with a felony, and the words felony are used throughout. Therefore, I think the question of whether or not it is a felony or was a misdemeanor, I think the documentation was sufficient. The court made a finding specifically. Also, even though it wasn't necessary, the court, out of abundance of caution, noted for the record that these were certified records, that all the documentation before it indicated nothing else but for it to be a felony. Except for sentence. Oh, well, he was concerned early on. When we first did the sentencing, he said, well, I don't understand how a judge could give, you know, we don't know since this is a wobbler and the defendant only received 109 days, this doesn't seem like a felony type of sentence for a felony conviction. However, you know, the court said reset it so we could get more clear documentation, and that's why we reset it over. He was concerned that, okay, there is a misdemeanor. It's possible this could be a misdemeanor. It's possible it could be a felony, but the court gave a sentence that could fall within either category, and he had a concern about that, so that's why he wanted to make sure that the documentation was squared away. If the conviction itself or if the sentence was greater than one year, I think that would have answered all questions right there, but he was concerned because the defendant had only received, I believe it was 109 days incarceration. What do you do with the fact that it was time served and the entire time served was not served in prison but rather in county jail? Does that make any difference to you? No, sir. No, sir, it does not. It's not a matter of where he served his punishment. In fact, it's not uncommon, even in our own federal system, for someone who is sentenced by the Bureau of Prisons for a felony offense, if that felony offense, if there's not enough time, in our case over in Reno, we have had more than enough. I think that's the wrong answer. I think our precedent is quite clear that in California, if there is a sentence served under one of these wobblers and the sentence is served in the county jail under California law, that means it's a misdemeanor. Now, there's another argument, which I expected you to make, and I wouldn't mind hearing a response to that, and that is but he was never sentenced to time served, excuse me, he was never sentenced to time in addition to the time after the plea so that he was not sentenced within the meaning of the California case law to county jail. He was only sentenced to time served. He couldn't have been put in prison before the conviction. So for purposes of our case law, I think it's as if we don't know where he would have been sentenced. It's as if he got a felony conviction and then he got probation. Yes, sir. I'm sorry if I – And the government can respond to that if they disagree with that characterization. Excuse me, the defendant can respond to that. I understand the court's question, and I apologize for not answering it, answering it, I guess, directly. I misunderstood the question. I guess quite simply, according to the documentation, there is nothing that indicates that his conviction is anything but a felony. Under the statute, there's nothing that says this will be a misdemeanor if. What he pled to is a felony. What he was charged with was a felony. And I guess without anything, I guess without trying to prove a negative, it's impossible to say, okay, well, prove to me that this didn't happen. The only thing that can be shown is that by absence, he was charged with a felony, he pled guilty to a felony, and he received a sentence. Anything outside of that would be left to, I guess, speculation and imagination. And I hope that answers the court's question more thoroughly. But I guess in sum, all the documents that were made available, that are available in regards to his prior conviction, indicate one thing and one thing only, that he did have a prior felony conviction. And as defined under the sentencing guidelines, that it was a crime of violence. What's your response to the, I think this is a defendant's position, that these minute orders are not proper documents that can be relied on under Shepard? The Shepard was not an all-exclusive list. The list that they gave basically is just certain samples. One of the things that, if we only had a, if all that we had was a minute order, and that's all that it was, depending on what is in that minute order, every jurisdiction charges and sentences a defendant differently. But the defendant's point is, you know, they're just clerical papers filled out by the clerk, and not even, you know, Well, I guess the, as far as being filled out by a clerk, I'm not too sure if we have any information if that is actually correct. A minute order, you know, while it's a form, it is filled out. Part of it is handwritten. It appears that in some of the instances, in some of the documentation, there are signatures that are placed up in here, and it becomes a part of the official record. I think you can't break out one piece of paper and look at it by itself. You have to look at sort of a totality of the circumstances. What other documentation, taken together in and by itself, supports it? Previously, this court has issued that an abstract, in and by itself, is not enough to show whether or not it's a conviction or whether it's a crime of violence. You need something else to go along with it. Now, just because one of the pieces of paper is an abstract, doesn't mean that you have to toss it out and ignore it, because this court has also listed that an abstract, when coupled with other documents, will support that same finding. Just because the California courts use a minute order as a part of their records to show what the defendant received as a sentence, then that shouldn't be an issue. In fact, a judgment of conviction coming out of a federal court doesn't have a defendant's signature on the judgment of conviction. Should we not? It has a judge's signature. That's true. That's true, but it still becomes an official court record, and that's exactly what's the most important thing. We're not asking a court clerk to come in to issue the sentence, and actually there's nothing in the record that says that this minute order was not prepared by the judge. But if the minute order is a part of the findings and a part of the court record to establish if the defendant was convicted and what he was convicted of, and it establishes all the information to show, I guess, the transaction of the court history, then it should be considered. What Shepard was concerned about was the use of police records that were basically tied into everything else, where a police record is clearly not a court record. The police report is what was the greatest concern under Shepard. Now, I think the Ninth Circuit has long before Shepard made it clear that a police report is not going to be – is not going to cut it for the purposes of finding a conviction or a pre-sentence investigation. Oh, okay. Any further – is that responsive to your question, Judge Tsushima? Any further questions? No, sir. Thank you, Your Honor. Your Honors, one of the things that was not produced by the government, very interestingly, was a judgment. That's because no judgment was ever issued in this case. If you want to rely on the minute orders, the minute orders in – on 8A ERR 69 say that pronouncement of judgment was withheld. There was never a judgment entered in this case. So how we can say whether it's a felony? If pronouncement of judgment was withheld, tell me how we know this. Excerpts of Record 69. At 270 – excuse me. At 270. Pronouncement of judgment was withheld. There was never a judgment entered in this case, ever. So there's a problem right there. So we're not really sure if he pled to what he was charged with. Obviously, if he pled to what he was charged with, the judge probably would have found that a felony and not given him three years probation, like in People v. Allotus, which was a very similar case. And it's interesting because in LeoCal, they were very concerned about the word use, the use of something as a deadly weapon, as were the – as was the California Supreme Court in People v. Allotus, where the woman shot the person five times, and they said, but was it a use of the gun? And they went into a very detailed analysis of use and found that she had a misdemeanor with three years probation, just like Mr. Diaz-Agueda. And if there are no further questions, then I will submit. Well, you may or may not be able to answer this for me. I'm not as familiar with – Excuse me, Your Honor. I'm not as familiar with the minute orders as an experienced California judge is. I'm not quite sure what it means to say pronouncement of judgment withheld. It says pronouncement of judgment withheld as felony. That there is no judgment. What does that mean? That means there is no judgment. And what does that mean? Does that mean he's not been convicted of assault? It's like it's the judge did not enter a sentence and then suspend it. There is no sentence. There is no judgment on this case. We know what happened to him then? He completed his probation, and that was the end of it. Is that because the reason it was not pronounced, is that because he was sentenced to time, sir? Is that the reason there's no judgment? I think judgment was withheld. I can only speculate. I am guessing there was something wrong with this case to begin with that may be the victim, or I don't know what happened in the case. But in any case, the judge does know, and if we would have had more records, we would probably know. And I think there was a problem with the case, and the judge said, look it, I'm not going to give you a sentence. Just stay out of trouble. Because he's on limited supervision. He's not even on official supervision. He's on a very limited supervision. I think it's a basically, stay out of trouble for the next three years, and your case is gone, is usually how it works. Would there be any objection by either one of you to see if we could supplement the record by finding out? No, Your Honor. I think that would be great, because I really do think there was a problem with the charge to begin with, and that's why the judge gave the sentence he did. Well, this is something I never. Well, withheld judgment. I have not thought of that. I wonder if we could hear from the government just what the government thinks on that point. Yes, I'm quite willing to do a little back and forth in terms of what this judgment withheld might mean. But before we hear from the government, I'd like to move over to EOR 70, the very next page in the excerpts, Terms and Conditions of Probation. We've got CYC findings, reimbursement, reimbursement, and then it says there's some space possible. Pronouncement of judgment is withheld. Defendant is sentenced to, and none of those are checked at all. Then you get down to that the defendant shall, and it says, serve 109 days in the San Bernardino County Jail with credit for time served, a matter of 109 days. Basically, it's time served. So we know that there's no further incarceration once he pleads.  The time that he served was waiting to go to court. That's correct. And once he pleads to this felony — There is no more time. There's no more time. So there's no time served after his plea. We know that. Right. But I don't quite know what means — what withheld means in this context, then. That there is no — I have seen it in California many times where they withhold judgment. If you stay out of trouble, then the case goes away. And that's basically — they put him on very limited supervision. Pardon me? Do you have a — is there a criminal record somewhere? Oh, you know what I did bring? I did bring the California statute dealing with — I don't know if this will be of any help. Here we go. Dealing with assault with a firearm, it's Section 1203.095. And it deals with — it says, except as provided in Subdivision B — blah, blah, blah. If any person convicted of a violation of Paragraph 2 of Subdivision A of Section 245, which is what we're dealing with here, Section 245A2, it says, it shall be a condition of that he or she be imprisoned at least six months. But then it goes down to say that that shall apply except in unusual cases where the interests of justice would best be served by granting probation. Okay. And that deals specifically with Section 245A. Okay. Let's hear from the government. They may be able to elucidate. They may not be able to on this question of what it means judgmentally. Will I get a chance to point out one more thing? Oh, please. Go ahead. You go ahead first, then. Okay. You want to hear from them? Okay. If you have one more thing. The other thing I wanted to point out in the terms and conditions of probation, the box for not possessing or having in his or her control any dangerous or deadly weapons, explosive devices, or materials to make explosive devices is not checked. That was not a condition of his probation. He did not have to relinquish his right to have a firearm. But a felon would have to, wouldn't they? Exactly. Now, which one? I'm now on this. I'm just kind of not picking it up. It's right above, on excerpts of Record 70, C-3 checks, submit to a search. Yeah. Right above it. Neither possess nor have dangerous weapons, deadly weapons. It is not checked as a condition of probation. I see. I'm with you. Okay. Thank you. And. Let's hear from the government. Obviously, this is not an ordinary way to proceed, but it may be useful in this instance. I guess, Your Honor, I can't give you a definition of pronouncement of judgment withheld as far as the felony block is checked. Simply put, I guess what the defendant is now asking during its rebuttal is for the circuit to do fact finding. It was not objected to below. It wasn't discussed. It wasn't even raised in the briefs until the rebuttal. So, I guess at this point is that there's nothing that indicates anything less other than they're asking this court to do its own matter of fact. What about the fact that he's not required to give up a firearm? Doesn't that show he's not a felon? Excerpts of Record, page 60, line 5G, where the block is initialed AA by the defendant. I also understand that the maximum punishments I could receive for each of the. I'm sorry, where are you? I'm going to follow you. Excerpts of Record, 60. 60, okay. The defendant during his. What line are you? Yes, Section G, that Federal and State law prohibit a convicted felon from possessing firearms. That would, I believe, would cover that he was advised. But the lead into 5, which this is 5G, I understand the maximum punishment I could receive. Correct, correct. I mean, that's as far as. But he did not receive it according to any document we have. Where do you see that he received that punishment? Your Honor, that is not whether or not someone. Doesn't it create a real ambiguity when he doesn't get the punishment that a felon would receive? Well, the. Part of the necessary punishment of a felon is he give up his right to firearms. That's not a punishment, Your Honor. That's merely a status that a convicted felon. Well, it's a requirement of law. Correct, Your Honor. And he doesn't get that requirement of law, creating a fairly significant doubt as to what he has been convicted of. I understand, Your Honor, but he's also not advised that he can't go out and vote either. It's just merely a part of his status. The fact that he's being told that he's not being told that he can't go out and possess a firearm isn't a part of the punishment. I think I understand the argument, although your argument is a little weak because there's no box that says you can't vote. Here there is a box that says you can't do a firearm and it's not marked. I would agree, Your Honor, but I think that's a term of condition of probation for if the conviction was for something else, say a misdemeanor, that would not prohibit him from possessing a firearm. Say it was a simple assault under the California statute, he's going to be supervised. The probation officer is concerned that this individual does have a little bit of a temper and that during his supervision that he would prefer that that individual not possess a firearm. Okay. Can I interject? I think I heard you say that the significance of the check that says judgment withheld and the significance of the not check for can't do a firearm was not raised in front of Judgment Kibben. Is that correct? Correct, Your Honor. Some disagreement on that point. No, I mean, it was never, I mean, unless I'm completely mistaken, but I do not recall there ever being any question as to someone objecting to say. Okay. I assume we have a transcript of that. Yes, yes, but my recollection is that there is nothing in there with the discussion and objecting saying, Judge, it says that it's withheld. Okay. I got it. Okay. This case has become unexpectedly interesting. The case of, let's see, it's our last one. United States v. Diaz, our great is now submitted. Do you have one more thing you'd like to say, I guess, in sub rebuttal? No, not really a rebuttal. I'd like just to make a suggestion to the Court that if the Court finds the record too confusing to make a decision, first of all, the defense attorney, I was not the trial attorney. The defense attorney who was at trial, Mr. Acosta, did tell the judge that the box for not possessing a firearm was not checked, and that should be taken into consideration. But my thought was, and you are more learned than I am by far, was that if it is too ambiguous on the record for the Court to make a decision, my alternative suggestion would be to send it back for the government to produce more documents at the district court level. That's all. Thank you. The case of United States v. Diaz, our great, is now submitted for decision. We thank counsel for their arguments. That concludes our argument for the day and for the week. We are now in adjournment.
judges: Noonan, Tashima, W. Fletcher